846 F2d 70
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
DRS. STEUER and LATHAM, PA, Rudolph R. Steuer, Jr., Harry S.
Latham, Plaintiffs-Appellants,
v.
NATIONAL MEDICAL ENTERPRISES, INC., N.M.E. Hospitals, Inc.,
Defendants- Appellees.
 No. 87-3753.
 United States Court of Appeals, Fourth Circuit.
 Argued March 7, 1988.
Decided May 10, 1988.
 
 H. Fulton Ross, Jr., John F. Beach (Ross & Beach, A. Camden Lewis, Daryl G. Hawkins, Lewis, Babcock, Pleicones & Hawkins on brief) for appellants.
 Richard Feinstein (Robert Fabrikant, Peter J. Sholl, McKenna, Conner & Cuneo, Gary E. Clary, Hall, Daniel, Winter & Clary on brief) for appellees.
 Before K.K. HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Doctors Rudolph R. Steuer, Jr., and Harry S. Latham (Steuer & Latham) appeal from the district court's judgment in favor of defendants, NME Hospitals, Inc. (NME) and National Medical Enterprises, Inc., in Steuer & Latham's action challenging a contract entered into between NME and Dr. James Mijanovich.[1] The contract in question gave Mijanovich the exclusive right to supply primary pathology services to patients at the Cherokee Memorial Hospital (CMH), a South Carolina facility owned and operated by NME. Steuer & Latham alleged in their complaint that the contract (1) violated federal antitrust laws; (2) deprived them of a property right without due process of law; and (3) operated to strip them of medical staff privileges protected by CMH's by-laws. Ruling on summary judgment, the district court held that Steuer & Latham failed to establish essential elements critical to each of their claims. We affirm.
 
 I.
 
 2
 Cherokee Memorial Hospital is a 162-bed acute care facility located in Cherokee County, South Carolina. Although it is the only hospital in the county, CMH has experienced a consistently declining occupancy rate, which in Fiscal Year 1987, fell to a low of 32 percent. The evidence demonstrated that strong competition from other hospitals was at least partially responsible for the diminishing number of patients. In 1984, for example, 38.8 percent of the residents of Cherokee County who were hospitalized were hospitalized at facilities other than CMH. In 1985, that figure amounted to 40.4 percent. Correspondingly, twelve of CMH's staff physicians, who in 1987 accounted for 42.1 percent of CMH's total admissions, also enjoyed staff privileges at hospitals other than CMH. As the district court found, consumers of hospital services in Cherokee County view hospitals located outside the county as good substitutes for the services offered by CMH.
 
 
 3
 Like most other hospitals, CMH operates a pathology laboratory with equipment that performs anatomical pathology tests on surgically removed tissue. Prior to 1985, Doctors Steuer and Latham were employed as CMH's contract pathologists in its laboratory.[2] They were the only pathologists then residing in Cherokee County. Steuer had served as the hospital's contract pathologist continuously since 1962, and Latham joined Steuer as an associate in 1976. Their contracts with the hospital were automatically renewable on a year-to-year basis, but they stated that the hospital could terminate the relationship without cause by providing advance notice of such termination within a designated period of time.
 
 
 4
 In 1984, NME acquired CMH from its previous owner, Cherokee County, and it assumed authority for all decisions relating to the hospital's management and operation. In November of that year, the Joint Commission on the Accreditation of Hospitals conducted an evaluation of the hospital's pathology department. As a result of its survey, the Commission certified eighteen deficiencies in the department, five of which required immediate remedial action for the hospital to retain its accreditation. Four other deficiencies were designated as "high priority."[3]
 
 
 5
 Notwithstanding the subpar operation of the pathology department, NME in 1984 offered to enter a new contract with Steuer & Latham. The doctors, however, rejected NME's offer and counterproposed that they receive approximately $70,000 more annually for clinical services than had been offered. NME refused the counterproposal, and in the Spring of 1985, it notified Steuer & Latham that it was terminating their contractual relationship with the facility.[4] Later that Summer, NME hired Dr. Mijanovich to replace Steuer & Latham on the same terms and conditions as had originally been offered to and rejected by Steuer & Latham.
 
 
 6
 The Mijanovich contract contained an exclusivity clause, which in operation required all staff physicians to send their hospital-generated pathology work to the hospital's lab for a primary examination by Mijanovich.[5] The contract, however, did not eliminate Steuer & Latham's staff privileges at the hospital or preclude them from performing outside work in their private laboratory or elsewhere.
 
 II.
 
 7
 In their first contention on appeal, Steuer & Latham argue that the district court ignored or misconstrued material facts that would allow them to prove that the Mijanovich contract constitutes a per se unlawful tying arrangement violative of section 1 of the Sherman Act. 15 U.S.C. Sec. 1. They identify the tying and tied products as "surgical type procedures in which tissue is removed from the body" and "primary anatomical pathology consultations performed by Dr. James R. Mijanovich." The district court found it undisputed, however, that the substitution of Dr. Mijanovich for plaintiffs as CMH's exclusive contract pathology provider had not resulted in an increase in price over competitive levels, or a diminution of quality. The court also undertook a thorough examination of the evidence relating to the diminishing occupancy rates at CMH, the market shares of CMH and its competitors, and the elasticity of consumer demand for CMH's services. It concluded that Steuer & Latham could not establish that NME had sufficient market power in any properly defined market for the tying product to force consumers to purchase Dr. Mijanovich's services.
 
 
 8
 The trial court further rejected Steuer & Latham's claims that NME's conduct deprived them of due process of law and violated the hospital's by-laws. It concluded that NME did not act under color of state law and that the Mijanovich contract did not divest Steuer & Latham of their staff privileges at CMH.
 
 
 9
 After a careful review of the record, we agree with the district court's conclusions and affirm on the basis of the reasoning expressed in its thorough opinion. Drs. Steuer & Latham, P.A. v. National Medical Enterprises, Inc., 672 F.Supp. 1489, 1509-15, 1525-26, 1528 (D.S.C.1987).
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Steuer & Latham brought this action in their own names and in the name of their professional association, "Drs. Steuer & Latham, P.A." They sued both NME and its parent corporation National Medical Enterprises, Inc
 
 
 [2]
 Although both worked primarily in CMH's pathology department, they maintained a private pathology clinic in Cherokee County, and they were parties to a similar contract relationship with another hospital
 
 
 [3]
 Dr. Steuer later admitted in deposition testimony that the pathology department had not been operated in accordance with high professional standards. It was also undisputed that almost all of the local Cherokee County physicians directed their office-generated pathology work away from Doctors Steuer and Latham to other reference laboratories
 
 
 [4]
 There is no question that NME's advance notice complied with its contractual obligation
 
 
 [5]
 Although the prior contracts between Steuer & Latham and the hospital included no exclusivity provisions, the doctors received all of the pathology work that the hospital generated